### BERNARD GIPSON *v.* COMMISSIONER OF CORRECTION
### (SC 16216)

McDonald, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued September 22, 2000—officially released August 21, 2001

*James J. Ruane*, with whom, on the brief, was *James O. Ruane*, for the appellant (petitioner).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *George Ferko*, assistant state's attorney, for the appellee (respondent).

*G. Douglas Nash*, chief of legal services, and *Gerard A. Smyth*, chief public defender, filed a brief for the office of the chief public defender as amicus curiae.

*Opinion*

PALMER, J. The question posed by this certified appeal is whether an indigent criminal defendant has a right to the assistance of counsel in connection with the filing of a petition for certification seeking this court's discretionary review of a judgment of the Appellate Court upholding the defendant's conviction. The

petitioner, Bernard Gipson, who is indigent, filed a petition for a writ of habeas corpus, claiming that he had been denied the effective assistance of counsel because his appellate counsel failed to file a petition for certification with this court challenging the Appellate Court's judgment upholding his conviction. The habeas court dismissed the habeas petition, concluding that the defendant had not been deprived of the effective assistance of counsel. The Appellate Court affirmed the judgment of the habeas court on the ground that the petitioner had no right to the assistance of counsel in connection with the filing of a petition for certification to this court. We conclude that the petitioner was entitled to such assistance under General Statutes § 51-296 (a)[1] and, consequently, we reverse the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In 1994, a jury found the petitioner guilty of robbery in the first degree in violation of General Statutes § 53a-

---

[1] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under . . . chapter [887], designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant, unless, in a misdemeanor case, at the time of the application for appointment of counsel, the court decides to dispose of the pending charge without subjecting the defendant to a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation or the court believes that the disposition of the pending case at a later date will not result in a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation and makes a statement to that effect on the record. If it appears to the court at a later date that, if convicted, the sentence of an indigent defendant for whom counsel has not been appointed will involve immediate incarceration or a suspended sentence of incarceration with a period of probation, counsel shall be appointed prior to trial or the entry of a plea of guilty or nolo contendere."

134 (a) (3), and the trial court rendered judgment in accordance with the jury verdict.[2] The petitioner appealed from the judgment of conviction to the Appellate Court, claiming that the trial court improperly had denied his motion to suppress a witness' pretrial identification. The Appellate Court rejected the petitioner's claim without opinion and affirmed the judgment of conviction. *State* v. *Gipson*, 37 Conn. App. 932, 657 A.2d 730 (1995). The petitioner did not file a petition for certification to appeal to this court.

Thereafter, the petitioner filed an amended petition for a writ of habeas corpus, claiming that he had been deprived of the effective assistance of appellate counsel in violation of the sixth and fourteenth amendments to the United States constitution. In particular, the petitioner asserted that the attorney who had been appointed to represent him in his direct appeal to the Appellate Court improperly had failed to file a petition for certification to appeal to this court[3] pursuant to General Statutes (Rev. to 1995) § 51-197f[4] and Practice

[2] The trial court sentenced the petitioner to a term of imprisonment of fourteen years, execution suspended after twelve years, and five years probation.

[3] The habeas petition also contained a second, distinct allegation of ineffective assistance of appellate counsel. That claim, however, is not a subject of this appeal.

[4] General Statutes (Rev. to 1995) § 51-197f provides: "Upon final determination of any appeal by the appellate court, there shall be no right to further review except the supreme court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of two justices of the supreme court so to certify and under such other rules as the justices of the supreme court shall establish. The procedure on appeal from the appellate court to the supreme court shall, except as otherwise provided, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court, unless modified by rule of the justices of the supreme court."

Book, 1978–97, §§ 4126[5] and 4127[6] (now Practice Book §§ 84-1 and 84-2, respectively). On October 17, 1997, following an evidentiary hearing, the habeas court dismissed the petitioner's habeas petition on the ground that the petitioner had not established that, under the circumstances, his appellate counsel's failure to file a petition for certification constituted ineffective assistance of counsel.[7] The habeas court, however, granted the petitioner's petition for certification to appeal to the Appellate Court from the judgment of the habeas court[8] and also granted his application for a waiver of fees, costs and expenses.

---

[5] Practice Book, 1978–97, § 4126 provided: "Appeals may be taken to the supreme court in causes determined in the appellate court where the supreme court, upon petition of an aggrieved party or request of the appellate panel which heard the case, certifies the case for review."

[6] Practice Book, 1978–97, § 4127 provided: "Certification by the supreme court on petition by a party is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons which will be considered:

"(1) Where the appellate court has decided a question of substance not theretofore determined by the supreme court or has decided it in a way probably not in accord with applicable decisions of the supreme court.

"(2) Where the decision under review is in conflict with other decisions of the appellate court.

"(3) Where the appellate court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the supreme court's supervision.

"(4) Where a question of great public importance is involved.

"(5) Where the judges of the appellate panel are divided in their decision or, though concurring in the result, are unable to agree upon a common ground of decision."

[7] In concluding that appellate counsel's failure to file a petition for certification did not constitute ineffective assistance of counsel, the habeas court reasoned that the opinion of the Appellate Court raised no issues worthy of certification by this court. See *Gipson* v. *Commissioner of Correction*, 54 Conn. App. 400, 435, 735 A.2d 847 (1999) (*Lavery, J.*, concurring).

[8] A petition for certification to appeal from the judgment of a habeas court filed pursuant to General Statutes § 52-470 should be distinguished from a petition for certification to appeal from a judgment of the Appellate Court to this court filed pursuant to General Statutes § 51-197f and Practice Book §§ 84-1 and 84-2. Unless otherwise indicated, all references hereinafter to

On appeal from the judgment of the habeas court to the Appellate Court, the petitioner claimed that his appellate counsel's failure to file a petition for certification had deprived him of his right to the effective assistance of counsel under the sixth and fourteenth amendments to the United States constitution and under § 51-296 (a). The Appellate Court rejected the petitioner's appeal, concluding that the petitioner could not prevail because, as a threshold matter, he has no federal constitutional or state statutory right to the assistance of counsel in connection with the filing of a petition for certification. Specifically, the Appellate Court, relying on federal precedent, concluded that the federal constitutional right to counsel in criminal cases does not extend to discretionary state appeals.[9] *Gipson* v. *Commissioner of Correction*, 54 Conn. App. 400, 405–406, 735 A.2d 847 (1999). The Appellate Court further concluded that § 51-296 does not provide an indigent defendant with a right to the assistance of counsel in connection with the filing of a petition for certification. Id., 407, 413, 421. Judge Lavery[10] issued a concurring opinion in which he concluded, contrary to the holding of the Appellate Court majority, that § 51-296

petitions for certification are to those petitions seeking this court's discretionary review of an adverse judgment of the Appellate Court.

[9] It is settled that there is no federal constitutional right of appeal. E.g., *Abney* v. *United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); *United States* v. *Matista*, 932 F.2d 1055, 1056 (2d Cir. 1991). If, however, a state grants a right of appeal to criminal defendants, the fourteenth amendment mandates that the state also provide counsel for those indigent defendants who wish to exercise that right. *Douglas* v. *California*, 372 U.S. 353, 356–57, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963); see also *Gaines* v. *Manson*, 194 Conn. 510, 515, 481 A.2d 1084 (1984). As the Appellate Court concluded, however, the federal constitution does not require a state to provide counsel for an indigent defendant who, like the petitioner, seeks discretionary appellate review of his or her first appeal. *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 405–406; see *Ross* v. *Moffitt*, 417 U.S. 600, 617–18, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974).

[10] Since the Appellate Court's release of its opinion in this case, Judge Lavery has been appointed Chief Judge of that court.

does afford an indigent defendant the right to counsel in connection with the filing of a petition for certification.[11] Id., 422 (*Lavery, J.*, concurring).

We granted the petitioner's petition for certification limited to the issue whether a "criminal defendant [has] a [state][12] constitutional right to the assistance of counsel in connection with [the filing of] a petition for certification . . . ." *Gipson* v. *Commissioner of Correction*, 251 Conn. 915, 740 A.2d 864 (1999). We thereafter expanded the certified question, however, to include a second issue, namely, whether "a criminal defendant [has] a state statutory right to the assistance of counsel in connection with [the filing of] a petition for certification . . . ." Id. Essentially for the reasons set forth by Judge Lavery in his concurring opinion in *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 421–34, we conclude that, under § 51-296 (a), an indigent criminal defendant has a right to the assistance of counsel for purposes of filing a petition for certification seeking this court's review of a judgment of the Appellate Court affirming a trial court's judgment of conviction.[13] We, therefore, reverse the judgment of the

---

[11] Judge Lavery also concluded, however, that the habeas court properly had determined that the petitioner did not establish that his appellate counsel's failure to file a petition for certification constituted ineffective assistance of counsel. *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 434–39 (*Lavery, J.*, concurring). Consequently, Judge Lavery concurred in the decision of the Appellate Court to affirm the habeas court's judgment.

[12] We note that the certified question set forth in our order granting the petitioner's petition for certification; see *Gipson* v. *Commissioner of Correction*, 251 Conn. 915, 740 A.2d 864 (1999); was not expressly limited to the state constitution and, therefore, would seem to urge our analysis of the issue under the federal constitution as well. The petitioner's petition for certification, however, sought our review under the state constitution only. Our grant of certification also was so limited.

[13] The petitioner does not claim that § 51-296 (a) requires appointed counsel to file a petition for certification on behalf of an indigent criminal defendant irrespective of whether a sufficient basis exists for the filing of such a petition. Rather, the petitioner claims, and we agree, that an indigent criminal defendant has the right to the assistance of counsel for purposes of determining whether a sound basis exists for the filing of a petition for

Appellate Court and remand the case to that court for a determination of whether the habeas court properly rejected the petitioner's claim of ineffective assistance of appellate counsel.[14]

Whether § 51-296 (a) affords an indigent criminal defendant the right to the assistance of counsel in connection with the filing of a petition for certification is a question of statutory interpretation that we review according to well settled principles. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 238 n.23, 756 A.2d 1264 (2000).

"As with all issues of statutory interpretation, we look first to the language of the statute." *In re Michaela Lee R.*, 253 Conn. 570, 583, 756 A.2d 214 (2000). Section 51-296 (a) provides in relevant part: "In any crimi-

certification. If such basis does exist, the defendant has the right to the assistance of counsel in preparing and filing the petition and, if the petition is granted, the right to counsel's assistance in connection with the appeal to this court.

[14] In light of our determination that the petitioner has a statutory right to the assistance of counsel in connection with the filing of a petition for certification, we do not address the petitioner's state constitutional claim. See, e.g., *State* v. *Lemon*, 248 Conn. 652, 663 n.15, 731 A.2d 271 (1999) (established wisdom counsels against unnecessary determinations of constitutional questions). In addition, we note that, although the state disputes the petitioner's claim of a right to counsel in connection with the filing of a petition for certification, the state does not dispute the principle that the right to counsel, if such right exists, includes the right to competent counsel. See, e.g., *Lozada* v. *Warden*, 223 Conn. 834, 838, 613 A.2d 818 (1992).

nal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under . . . chapter [887],[15] designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ." Inasmuch as § 51-296 (a) contains no express reference to appellate proceedings, the focus of our inquiry necessarily involves the scope of the term "any criminal action" as it is used in that statutory subsection.

As the Appellate Court observed, "the words 'any criminal action' are not defined in § 51-296 or chapter 887, nor is the meaning of those words readily apparent from their context . . . ." *Gipson* v. *Commissioner of Correction,* supra, 54 Conn. App. 409. It, therefore, "is appropriate to look to the common understanding of the term . . . ." (Internal quotation marks omitted.) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services,* 253 Conn. 683, 696, 755 A.2d 850 (2000); see also General Statutes § 1-1 (a).[16] We agree with the Appellate Court that the word "any," for purposes of § 51-296 (a), connotes "all" or "every." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction,* supra, 409 ("[t]he word any in statutes is generally used in the sense of all or every and its meaning is comprehensive in scope and inclusive in range" [internal quotation marks omitted]). We, therefore, may presume that the legislature, in using the word "any" to modify the term "criminal action," intended that term to be broad, rather than restrictive, in scope.

---

[15] Section 51-296 falls within chapter 887 of the General Statutes, which is entitled "Public Defender Services."

[16] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

As this court previously has stated, "the word 'action' has no precise meaning and the scope of proceedings which will be included within the term as used in the statutes depends upon the nature and purpose of the particular statute in question." *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 605, 13 A.2d 462 (1940); see also *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 730, 557 A.2d 116 (1989) ("[i]n a general sense the word action means the lawful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides" [internal quotation marks omitted]); *Dayco Corp.* v. *Fred T. Roberts & Co.*, 192 Conn. 497, 502, 472 A.2d 780 (1984) (same). Because the word "action" may have "different meanings in different contexts . . . we [take] a functional approach in our construction of the [word], eschewing the application of inflexible rules in favor of a contextual analysis." (Citation omitted; internal quotation marks omitted.) *Stevens* v. *Aetna Life & Casualty Co.*, 233 Conn. 460, 467–68, 659 A.2d 707 (1995) (construing meaning of term final judgment). For an understanding of that context, we turn, first, to the legislative history of § 51-296, which is contained in the majority opinion of the Appellate Court.

"Prior to 1965, counsel was provided for indigent defendants under limited circumstances in trial proceedings only, despite the existence of appellate review. From 1965 to 1974, the statutory right to counsel included representation in appeals to the Appellate Session of the trial court and on certification to the Supreme Court, in addition to trial proceedings. In 1974, the legislature eliminated all reference to a statutory right to counsel in appeals of any kind.

"Connecticut 'was the first state to adopt the public defender system.' *State* v. *Hudson*, 154 Conn. 631, 635, 228 A.2d 132 (1967). Since at least 1917, the legislature

has recognized an indigent's right, in limited circumstances, to the assistance of counsel. See Public Acts 1917, c. 225; *State* v. *Hudson,* supra, 635. Public Acts 1917, c. 225, § 1, required the judges of the Superior Court to appoint an attorney to act 'in the defense of all persons charged with crime in said court when such person is without funds sufficient to employ counsel for such defense.' In 1921, the legislature amended, as follows, the public defender statute to specify the courts before which [public defenders] could appear: 'Each such public defender shall act as attorney in the defense of any person charged with crime in either the superior court, the court of common pleas or the district court of Waterbury, in the county for which he is appointed, when such accused person is without funds sufficient to employ counsel for such defense.' Public Acts 1921, c. 129, § 1.

"In 1958, the text of General Statutes (1958 Rev.) § 54-80 provided in relevant part: 'Each such public defender shall act as attorney in the defense of any person charged with crime in either the superior court or the court of common pleas for the county for which he has been appointed, when such person is without funds sufficient to employ counsel for such defense. . . .'

"In 1959, the legislature established the Circuit Court; Public Acts 1959, No. 28, § 1; and modified the scope of a public defender's representation. In Public Acts 1959, No. 28, § 13, which was codified at General Statutes (Sup. 1959) § 54-81a, the legislature first used the phrase 'any criminal action.' That act provided in relevant part: 'In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, appoint an attorney to act as special public defender and represent the defendant. . . .' Public Acts 1959, No. 28, § 13.

"Although criminal defendants have had a statutory right to appeal since at least 1882; see *State* v. *Vaughan*, 71 Conn. 457, 460, 42 A. 640 (1899); the first statutory reference to an indigent's right to appellate counsel appeared in 1965. Public Acts 1965, No. 178, § 1, which amended § 54-81a, provided in relevant part: 'In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate the public defender for such circuit or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the circuit court and, if certification is sought and granted, to the supreme court of errors. . . .' In 1967, the legislature amended § 54-81a to provide for representation of indigents in proceedings under writs of habeas corpus challenging extradition under the Uniform Criminal Extradition Act, General Statutes (Rev. to 1966) § 54-157 et seq. Public Acts 1967, No. 189.

"In 1972, the legislature amended § 54-81a to reflect that the Appellate Division of the Court of Common Pleas had replaced the Appellate Division of the Circuit Court. Public Acts 1972, No. 281, § 23, which amended § 54-81a, provided in relevant part: 'The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the court of common pleas and, if certification is sought and granted, to the supreme court. . . .' In 1974, the legislature amended § 54-81a to reflect that the Court of Common Pleas had assumed the jurisdiction and functions of the Circuit Court; Public Acts 1974, No. 74-183, §§ 5 and 7 [P.A. 74-183]; and that the Appellate Session of the Superior Court had replaced the Appellate Division of the Court of Common Pleas. [P.A.] 74-183, § 9. [Public Acts] 74-183, § 150, which amended § 54-81a, stated in relevant part: 'In any criminal action

in the court of common pleas, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate a public defender or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the superior court and, if certification is sought and granted, to the supreme court. . . .'

"In 1974, the legislature repealed [General Statutes §§ 54-80 and] 54-81a. Public Acts 1974, No. 74-317, § 12 [P.A. 74-317]. [Public Acts 74-317, § 7] was codified at General Statutes (Rev. to 1975) § 51-296, and, as enacted, provided in relevant part: '(a) *In any criminal action*, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any juvenile court matter, the court before which the matter is pending shall, if it determines, after investigation by the public defender or his office, that a defendant is indigent, as defined under this act, designate a public defender or assistant public defender to represent such indigent defendant . . . .' (Emphasis added.) As enacted, § 51-296 did not mention appellate proceedings and, despite minor amendments, which are unimportant for purposes of this discussion, the text of § 51-296 remains unchanged. The legislative history of the adoption of § 51-296 contains no discussion concerning the elimination of the provision authorizing public defenders to pursue discretionary appeals to our Supreme Court. See 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4839–43; 17 S. Proc., Pt. 6, 1974 Spec. Sess., pp. 2262–65, 2270–71; Conn. Joint Standing Committee Hearings, Judiciary, 1974 Sess., pp. [221-1 through 221-3, 221-15 through 221-20, 221-36 through 221-37, 221-56, 221-57, 221-65, 221-76 through 221-77, 221-96 through 221-100, 221-106 through 221-107]." *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 410–13.

For several reasons, we are persuaded that this legis-
lative genealogy, when viewed in proper context, sup-
ports the petitioner's contention that he has a statutory
right to the assistance of counsel in connection with
the filing of a petition for certification. First, in 1963,
the United States Supreme Court, in *Douglas* v. *Califor-
nia*, 372 U.S. 353, 357–58, 83 S. Ct. 814, 9 L. Ed. 2d
811 (1963), held that an indigent criminal defendant is
constitutionally entitled to the assistance of counsel in
a first appeal as of right.[17] In this state, defendants have
had a right of appeal from a judgment of conviction
since at least 1794. See Acts and Laws of the State of
Connecticut in America 1784–91, An Act Concerning
Delinquents, ¶4, p. 39 (passed 1784). Thus, in 1974,
when the legislature mandated that a public defender
be appointed for an indigent criminal defendant in "any
criminal action," it already was well established that
a defendant had a federal constitutional right to the
appointment of counsel in connection with his or her
first appeal. This fact belies the state's construction of
the word "action" as including only trial proceedings
because it is unlikely that the legislature, having been
aware of the federal constitutional entitlement to appel-
late counsel in connection with a defendant's first
appeal as of right, would have enacted a statute mandat-
ing the appointment of trial counsel but not counsel to
represent the defendant in connection with his or her
first appeal.[18] In other words, we perceive no rational

[17] As we previously indicated; see footnote 9 of this opinion; the United
States Supreme Court held, in *Ross* v. *Moffitt*, 417 U.S. 600, 610, 94 S. Ct.
2437, 41 L. Ed. 2d 341 (1974), that a defendant has no federal constitutional
right to the assistance of counsel in connection with discretionary state
appeals. In *Ross*, however, the United States Supreme Court stated that it
did "not mean by [its] opinion to in any way discourage those States which
have, as a matter of legislative choice, made counsel available to convicted
defendants at all stages of judicial review." Id., 618.

[18] Indeed, this court previously has indicated that § 51-296 provides an
indigent defendant with a right to competent appellate counsel as well as
competent trial counsel. See, e.g., *Lozada* v. *Warden*, 223 Conn. 834, 841,
613 A.2d 818 (1992).

reason why the legislature, having made express provision for the appointment of counsel in § 51-296 (a), would have excluded a first appeal from the purview of that requirement because, in this state, as in other states, an indigent criminal defendant has a constitutional right to the appointment of not only trial counsel, but also counsel to represent him or her in connection with a first appeal as of right.[19] Moreover, although it lawfully could have limited the mandatory appointment of counsel to first appeals as of right, the legislature, in placing the word "any" before the term "criminal action," evinced its intent that the word "action" encompass all appeals and not merely first appeals.[20]

---

[19] It also is implausible that the legislature would have failed to provide for the appointment of counsel to represent an indigent criminal defendant in connection with a first appeal notwithstanding that such appointment is constitutionally required and, in the same statutory subsection, mandate the appointment of counsel to represent an indigent criminal defendant in connection with certain matters, such as habeas proceedings, for which the federal constitution does not guarantee such representation. See *Pennsylvania* v. *Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (no federal constitutional right to assistance of counsel in habeas corpus proceedings); see also *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 701, 699 A.2d 1003 (1997).

[20] It also is noteworthy that, as Judge Lavery points out in his concurring opinion, this court "has adopted an expansive interpretation of [§ 51-296 (a)] in habeas corpus proceedings. Section 51-296 (a) provides that an indigent defendant has a right to counsel '[i]n any criminal action, *in any habeas corpus proceeding arising from a criminal matter*, in any extradition proceeding, or in any delinquency matter . . . .' (Emphasis added.) Although there is no federal constitutional right to counsel in habeas corpus proceedings; *Pennsylvania* v. *Finley*, 481 U.S. 551, [555], 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); [the courts of this state] have interpreted § 51-296's reference to 'in any habeas corpus proceeding' to provide an indigent defendant with a statutory right to counsel in habeas hearings; *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 701–702, 699 A.2d 1003 (1997); *Lozada* v. *Warden*, [223 Conn. 834, 838–39, 613 A.2d 818 (1992)]; and habeas appeals. *Iovieno* v. *Commissioner of Correction*, supra, 702; *Franko* v. *Bronson*, 19 Conn. App. 686, 692, 563 A.2d 1036 (1989)." *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 431 (*Lavery, J.*, concurring).

Our liberal construction of the term "any habeas corpus proceeding" is consistent with the construction of the term "any criminal action" urged by the petitioner.

This conclusion is further buttressed by the fact that the term "any criminal action" is not qualified or limited in any way. In contrast, the legislature repeatedly "use[d] qualifying language to limit the scope of [the] phrase [in any criminal action] between 1959 and 1974. In 1959, when the legislature first used this phrase, it qualified it by stating '[i]n any criminal action in the circuit court . . . .' Public Acts 1959, No. 28, § 13. In 1974, when the Court of Common Pleas assumed the jurisdiction and functions of the Circuit Court; see [P.A.] 74-183, §§ 5 and 7; the legislature once again limited the scope of this phrase by stating '[i]n any criminal action in the court of common pleas . . . .' [P.A.] 74-183, § 150. In 1974, when the legislature eliminated the reference to appellate proceedings in § 51-81a by repealing that statute and it adopted P.A. 74-317, § 7, it failed to use any qualifying language to limit the scope of '[i]n any criminal action . . . .' As evidenced by its conduct between 1959 and 1974, '[t]he legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute'; *State* v. *Ingram,* 43 Conn. App. 801, 825, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997); and the phrases 'in the circuit court' and 'in the court of common pleas' cannot be construed as excessive verbiage because '[w]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions.' *Ferrigno* v. *Cromwell Development Associates,* 244 Conn. 189, 196, 708 A.2d 1371 (1998). If the legislature had intended to limit the scope of P.A. 74-317, § 7, to encompass only the appointment of counsel in trial proceedings, it would follow, in light of its conduct between 1959 and 1974, that the legislature would have qualified [the term] '[i]n any criminal action' in P.A. 74-317, § 7, by referring to the trial court." *Gipson* v. *Commissioner of Correction,* supra, 54 Conn. App. 428–29 (*Lavery, J.,* concurring).

Furthermore, the primary purpose of P.A. 74-317 was the creation of a public defender services commission to administer the public defender system in lieu of the judges of the Superior Court, who previously had been responsible for that function.[21] See generally 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4839–42, remarks of Representative Samuel S. Freedman. There is nothing in the history of P.A. 74-317 to indicate that the legislature, in establishing a public defender services commission and consolidating the provisions pertaining to the appointment of counsel under the new statutory scheme relating to that commission, intended to eliminate any rights that previously had been afforded indigent defendants. Indeed, the sparse legislative history that bears on this issue suggests a contrary conclusion.[22] Finally, we are reluctant to ascribe such an intent to the legislature in light of the fact that, as the Appellate Court recognized, discretionary review by this court "plays a vital role in our judicial system . . . ." *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 418.

Section 1 of P.A. 74-317 lends additional support to the statutory interpretation urged by the petitioner. In

[21] Indeed, P.A. 74-317 is entitled "An Act Concerning a Public Defender Services Commission."

[22] For example, "[i]n commenting on House Bill 5773, which became [P.A.] 74-317, Senator Richard S. Scalo stated: [T]his is one of the most important bills that we have passed this session in terms of providing effective services in the criminal sphere for indigent people. . . . The state has a responsibility to provide adequate and effective legal counsel for those people who are unable to provide economically for counsel themselves. . . . I think that this bill will go a long way to removing all of those impediments [toward] the standard that we are all seeking which is equal, effective, and adequate assistance of counsel for indigent people. 17 S. Proc., Pt. 6, 1974 Spec. Sess., pp. 2262–64. Although Senator Scalo was not specifically referring to § 7 of [P.A.] 74-317, his statements are nonetheless probative of the intent underlying that public act. . . . [I]t seems implausible that a legislature, concerned with affording greater protection to indigent defendants, would extinguish any of the provisions for appellate counsel that were set forth in § 51-81a." (Citation omitted; internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 430–31 (*Lavery, J.*, concurring).

particular, that section mandated that public defender "services . . . consist of those duties carried out by superior court, circuit court and court of common pleas public defenders prior to October 1, 1975, and responsibilities provided for by this act . . . ." P.A. 74-317, § 1, codified at General Statutes (Rev. to 1975) § 51-289 (d). Under §§ 54-80 and 54-81a,[23] the duties of this state's public defenders prior to October 1, 1975, included the representation of indigent defendants at all levels of appeal. Because the legislature surely was aware of that fact; see, e.g., *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 583, 726 A.2d 502 (1999) ("[w]e presume that laws are enacted in view of existing relevant statutes" [internal quotation marks omitted]); P.A. 74-317, § 1, is persuasive evidence that the legislature intended for public defenders to continue to represent defendants in connection with appeals to this court. Thus, an interpretation of the term "any criminal action" in § 51-296 as excluding discretionary appeals to this court would conflict with the express mandate of P.A. 74-317, § 1.[24] We are bound to avoid such an

[23] Both § 54-80 and § 54-81a were repealed, effective October 1, 1975, by P.A. 74-317, §§ 12 and 14. As we previously have noted, § 54-81a expressly authorized public defenders in the Circuit Court and Court of Common Pleas to represent indigent defendants at all levels of appeal, including appeals to this court. Although § 54-80, relating to Superior Court public defenders, contained no such express language, we see no reason why the legislature would have intended for Superior Court public defenders to have any less responsibility in representing indigent criminal defendants on appeal than their counterparts in the Circuit Court and Court of Common Pleas.

[24] Public Act 74-317, § 1, currently is codified at General Statutes § 51-289. Section 51-289 provides: "Public Defender Services Commission established. Judicial Department to provide facilities in courts. Compensation plan. (a) There is established a Public Defender Services Commission which shall consist of seven members appointed as follows: (1) The Chief Justice shall appoint two judges of the Superior Court, or a judge of the Superior Court and any one of the following: A retired judge of the Superior Court, a former judge of the Superior Court, a retired judge of the Circuit Court, or a retired judge of the Court of Common Pleas; (2) the speaker of the House, the president pro tempore of the Senate, the minority leader of the House and the minority leader of the Senate shall each appoint one member; (3) the Governor shall appoint a chairman.

interpretation. In a case such as this one, in which

"(b) The chairman shall serve for a three-year term and all appointments of members to replace those whose terms expire shall be for terms of three years.

"(c) No more than three of the members, other than the chairman, may be members of the same political party. Of the four nonjudicial members, other than the chairman, at least two shall not be members of the bar of any state.

"(d) If any vacancy occurs on the commission, the appointing authority having the power to make the initial appointment under the provisions of this chapter shall appoint a person for the unexpired term in accordance with the provisions of this chapter.

"(e) Members shall serve without compensation but shall be reimbursed for actual expenses incurred while engaged in the duties of the commission. Members of this commission shall not be employed or nominated to serve as public defenders or in any other position created under this chapter.

"(f) The commission may adopt such rules as it deems necessary for the conduct of its internal affairs.

"(g) The commission shall be responsible for carrying out the purposes of this chapter and to carry out those purposes it shall adopt rules relating to the operations of a Division of Public Defender Services and shall provide any facilities other than those provided in the courts by the Judicial Department necessary for the carrying out of those services. Public defender services shall consist of those duties carried out by Superior Court and Court of Common Pleas public defenders prior to July 1, 1978, and those responsibilities provided for by this chapter. Public defender services shall be executed by a Chief Public Defender, a deputy chief public defender, public defenders, assistant public defenders, deputy assistant public defenders, investigators and other personnel which the commission deems necessary.

"(h) The Judicial Department shall provide adequate facilities for public defenders, assistant public defenders and deputy assistant public defenders in the various courts.

"(i) The commission shall establish a compensation plan comparable to that established for the Division of Criminal Justice in chapter 886, as it may be amended, and shall make rules relative to employees serving under the chapter, including sick leave and vacation time.

"(j) The commission shall be an autonomous body within the Judicial Department for fiscal and budgetary purposes only."

We note that P.A. 74-317, § 1, originally codified at General Statutes (Rev. to 1975) § 51-289, was amended by Public Acts 1976, No. 76-436, § 574. This amendment, which reflected the merger of the Court of Common Pleas with the Superior Court effective July 1, 1978; see General Statutes § 51-164s; has no bearing on the issue of statutory interpretation presented by this appeal. The provision relating to the duties of public defenders was moved from subsection (d) to subsection (g) of § 51-289 as a result of 1982 amend-

"more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Eskin* v. *Castiglia*, 253 Conn. 516, 527, 753 A.2d 927 (2000). In contrast, an interpretation of the term "any criminal action" as including appeals to this court gives full meaning to both § 51-289 and § 51-296. See *Linden Condominium Assn., Inc.* v. *McKenna*, supra, 583–84 ("[w]e presume that laws are enacted in view of existing relevant statutes . . . [and] we read each statute in a manner that will not thwart its intended purpose or lead to absurd results" [citations omitted; internal quotation marks omitted]).

Finally, it is undisputed that public defenders and special public defenders consistently have been appointed to represent indigent defendants in connection with appeals to this court since § 51-296 was enacted over twenty-five years ago. Indeed, we are informed by amicus curiae, the office of the chief public defender, that public defenders have filed over 800 petitions for certification with this court.[25] In light of the

---

ments to § 51-289 not relevant to this appeal. See Public Acts 1982, No. 82-248, § 144.

[25] Moreover, as Judge Lavery noted in his concurring opinion, "[t]he office of the public defender or a special public defender filed a petition for certification or an opposition to the state's petition for certification in at least fourteen of the approximately twenty nonhabeas criminal petitions decided by [the state] Supreme Court between January and April, 1999. Representation was provided in at least fifty-nine of the approximately ninety-five nonhabeas criminal petitions for certification decided in 1998." *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 433 (*Lavery, J.*, concurring).

In addition, we are informed by amicus curiae that the public defender services commission; see footnote 24 of this opinion; recently has adopted a formal policy pursuant to which public defenders and special public defenders "assigned to represent clients on appeal are responsible for representation of their clients through and including review by [this] court . . . [upon the granting of certification to appeal]." Public Defender Services Commission, Policy Re: Petitions for Certification to the Connecticut

long and uninterrupted history of the appointment of counsel to represent indigent defendants in connection with petitions for certification, it is reasonable to presume legislative awareness of the practice; in such circumstances, it also is reasonable to treat the legislative inaction as tacit approval of the statutory interpretation upon which that practice has been predicated. See *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 783, 739 A.2d 238 (1999) ("[a]lthough we usually have given weight to legislative inaction following a *judicial* construction of a statute, on occasion we also have noted the significance of legislative inaction following an *administrative* construction of a statute" [emphasis in original]).

For these reasons, we are persuaded that § 51-296 (a) accorded the petitioner the right to representation in connection with the filing of a petition for certification following the Appellate Court's judgment upholding his robbery conviction in 1995. We therefore reverse the judgment of the Appellate Court in this case. Because, however, the Appellate Court did not reach the issue whether the trial court properly concluded that the petitioner's right to counsel had not been violated notwithstanding his appellate counsel's failure to file a petition for certification, we remand the case to the Appellate Court for its resolution of that issue.[26]

Supreme Court (adopted January 11, 2000). We note that this policy does not require assigned counsel to file a petition for certification in every case following an adverse judgment of the Appellate Court; rather, the policy requires counsel to file a petition for certification only "if the petition has merit and should be filed." Id. This policy is consistent with the position advanced by the petitioner. See footnote 13 of this opinion.

[26] We note that the Appellate Court majority stated that, based on the reasons set forth by Judge Lavery in his concurring opinion, it would have rejected the merits of the petitioner's ineffective assistance of counsel claim if it had been required to reach the merits of that claim. *Gipson* v. *Commissioner of Correction*, supra, 54 Conn. App. 421 n.12. It does not appear, however, that the Appellate Court majority actually reviewed and rejected the petitioner's claim on its merits as an alternative ground for affirming the judgment of the habeas court. Consequently, it is necessary that the

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion BORDEN, KATZ and VERTEFEUILLE, Js., concurred.

MCDONALD, C. J., dissenting. After reviewing the record, I agree with Judge Lavery that the defendant failed to establish in the habeas court that he was denied effective assistance of counsel in connection with a petition for certification. *Gipson* v. *Commissioner of Correction*, 54 Conn. App. 400, 436, 735 A.2d 847 (1999) (*Lavery, J.*, concurring.) I would, therefore, affirm the judgment of the Appellate Court upholding the decision of the habeas court.

Accordingly, I respectfully dissent.

case be remanded to the Appellate Court for that court's review of the merits of the petitioner's claim.

