[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On or about Thursday, May 24, 2001, at approximately 6; 30 in the evening, the defendant Gerry Mannick sat chatting with his friend Kevin Bayer in an automobile parked in a lot in front of the Ocean State Job Lot in Brooklyn, Connecticut. They sat waiting for a friend, the driver of the car, who had gone into the Ocean State Job Lot to shop. The parking lot in question is a commercial parking lot which services the Ocean State Job Lot Store, a Subway Sandwich shop, NAPA Auto Parts, a bowling alley, a Salvation Army Store, Rent-A-Center, CVS, Kentucky Fried Chicken, a real estate agency, and a package store. At the time, most of these stores were open for business.
Upon noticing Mr. Mannick and Mr. Bayer seated in the parking lot for fifteen minutes, Trooper Dragon, of the Connecticut State Police, Troop C, approached the vehicle and directed the gentlemen to exit the vehicle for questioning. As a fruit of this questioning, Mr. Mannick was allegedly found in possession of contraband and allegedly made additional inculpatory statements to Trooper Dragon. Based on this information, Mr. Mannick was placed under arrest.
In the case at bar, the automobile in which the defendant was a passenger was in a commercial parking lot at 6:30 p.m. on a weekday evening — a time when the adjacent stores were open for business. CT Page 1504 The defendant and his friend were not parked in a place that would alone create a degree of suspicion and they were not engaged in the kind of bizarre "furtive conduct" that would justify investigation. The fact that the defendant and a friend were sitting and chatting for a whole fifteen minutes while the driver shopped, the defendant claims, cannot have created a reasonable and articulable suspicion necessary to justify aTerry detention. At hearing, the trooper articulated no reasonable suspicion that the defendant was committing or had committed a crime. The issue here is whether the facts of this case represent a situation that would create such suspicion and whether these facts would permit a Terry
stop.
The defendant, in the case at bar, was merely sitting, speaking with, a friend in an automobile parked in a commercial lot in the area of stores which were open for business when the trooper approached and began to interrogate him and the other passenger. The court finds that upon approaching and questioning the two individuals — the defendant was seized. That is, that the trooper's show of authority in this manner rose to the level of a seizure: a reasonable person in similar circumstances would have believed he was not free to leave.
Under the fourth amendment to the United States Constitution, and under Article First, §§ 7 and 9 of the Connecticut Constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. Terry v. Ohio,392 U.S. 1, 21 (1968); State v. Oquendo, 223 Conn. 635, 654 (1992); Statev. Lamme, 216 Conn. 172, 184 (1990).
"Any inquiry into the permissible justification for, and boundaries of, a particular investigatory detention . . . is necessarily factbound."Terry v. Ohio, supra, 392 U.S. at 29; State v. Edwards, supra,214 Conn. at 71-2;State v. Aillon, 202 Conn. 385, 401 (1987). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available and known, by the police would rise to that level of suspicion. The court finds this information was an insufficient basis to detain the defendant. In State v. Donahue,257 Conn. 636, the state claimed "that the following five factors produced a reasonable suspicion that the defendant [in that case] was engaged or about to engage in criminal activity: (1) he was driving in a deserted area late at night; (2) he made an abrupt turn into the parking lot; (3) he pulled into an empty, uniit parking lot of an establishment that had closed for the evening; (4) his Vehicle was in an area that had experienced a rise in criminal activity; and (5) his behavior was "consistent with the type of behavior that often preceded the criminal CT Page 1505 activity [that officer] was out on patrol investigating." Id. at 647-48.
In Donahue, the Connecticut Supreme Court, held that these reasons were insufficient to detain an individual and that a detention based on those factors was in fact illegal. Id. at 648.
Likewise, in State v. Marinoccio, infra, the defendant in that case was seized by the Plainfield police while a passenger in a car parked in the Plainfield Industrial Park shortly before 10 p.m. No businesses were open at the time and entrances to the Industrial Park were posted with signs limiting access to "authorized vehicles." The Plainfield Industrial Park had been the subject of increased complaints regarding underage drinking, vandalism and narcotic activity. Nevertheless, this court held that a no unauthorized vehicle sign' coupled with the presence of an automobile on a public road did not provide the detaining officer with a reasonable, articulable suspicion that a crime was occurring or was about to occur. Thus, the defendant in that case was illegally seized and any evidence procured as a result of that illegal seizure was suppressed.State v. Amy Marinoccic, Superior Court, Docket #CR01-111669S, pp. 7-9,Potter, J. (August 24, 2001).
In State v. Donahue, 251 Conn. 636 (1999), the Connecticut Supreme Court held that the presence of defendant Donahue's vehicle in an area where drug trafficking was common and that the vehicle observed in this area at a very early hour of the morning did not constitute grounds for aTerry stop. Id. at 646. "Obviously, these factors are not criminal in and of themselves and they do not form the proper basis for rational inferences that warrant [the officer's] intrusion. Id. at 645-46.[1]
The automobile in which the defendant was a passenger was not located in a crime area and even if it had been, this would not have created the level of reasonable and articulable suspicion necessary for the lawful detention of the automobile. See e.g. Donahue, 251 Conn. 636 (1999). The vehicle was also not located in an area that was remote, deserted, or otherwise remarkable as a zone where unusual or suspicious activities might occur. See, e.g., State v. Januszewski, 182 Conn. 142 (1980) (finding that the presence of individuals in a commuter parking lot at an hour when commuters were at work could arouse some suspicion.)
The court having found that there was no reasonable probable cause for the police to stop and search the defendant, the defendant's motion to suppress is granted.
Kocay, J.