[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
John Sorabella is charged, inter alia, with importing child pornography into this state, in violation of General Statutes § 53a-196c. He has moved to dismiss count ten of the 12-count information filed by the state, claiming that the statute is both under-inclusive, in that it does not prohibit importing child pornography via the internet, the apparent gravamen of the charge in this count, and over-inclusive, in that it permits prosecution for importing material that is not "child pornography" as that term has been defined and limited in a series of decisions by the United States Supreme Court.
The crime of importing child pornography was created byPublic Act No. 85-496, § 5, and the present codification, § 53a-196c (a), provides that " (a) person, is guilty of importing child pornography when, with intent to promote child pornography, he knowingly imports or causes to be imported into the state any child pornography of known content and character." Subsection (b) of the statute creates an evidentiary presumption in prosecutions under the statute that " (i)mportation of two or more copies of any publication containing child pornography shall be prima facie evidence that such publications were imported with intent to promote child pornography."
 I
The accused's first argument proceeds from a technical premise which the state has not questioned and which I have accepted for the purposes of this motion; viz., that " (i)nformation appearing as a computer pictorial image on an originating personal computer in one state that travels electronically to a receiving personal computer in another state is in bytes or packets of bytes and not in the form of a recognizable picture. . . . As the bytes or packets of bytes travels (sic) between the personal computers (undisturbed), it (sic) is not a graphic pictorial image." Affidavit of Richard C. Satterfield Relative to Defendant's Motion to Dismiss, p. 3. Because a computer transmission is not a CT Page 13466 "graphic pictorial image," the accused argues, it cannot be proscribed by § 53a-196c, which is limited to "publications" such as magazines, newspapers, videotapes, motion picture films, photographs, etc.
The first problem with this argument is that the statute prohibits the importation of "any child pornography of known content and character," without limitation as to type.[1] "The word `any' in statutes is generally used in the sense of `all' or `every' and its meaning is comprehensive in scope and inclusive in range." (Internal quotation marks omitted.) Gipson v. Commissioner of Correction, 54 Conn. App. 400, 409
(1999), reversed on other grounds, 257 Conn. 632 (2001). To paraphrase the Supreme Court, I, therefore, may presume that the legislature, in using the word "any" to modify the term "child pornography," "intended that term to be broad, rather than restrictive in scope." Gipson v.Commissioner of Correction, supra, 257 Conn. 640.
The accused's argument ignores the breadth of the definition of the offense while focusing on a term that appears only in the evidentiary presumption found in the statute.
The second problem is that, to the degree that the word "publication" in subsection (b) of the statute relates at all to the definition of the offense in subsection (a), the accused adopts a far too restrictive understanding of the meaning of the word. Generally, "publication" is "the act of declaring or announcing to the public." Black's Law Dictionary (7th Ed. 1999). And, as the law of defamation makes clear, "publication" need not be to the public at large and may be to one person alone. Id.[2]
The Supreme Court has noted that the purpose of the legislature in enacting laws related to child pornography was to "protect the victims of child pornography and destroy the market for child pornography." Statev. Ehlers, 252 Conn. 579, 593 (2000). With such overarching goals there is no reason to believe the legislature intended to limit prosecutions for importing child pornography to only those cases in which particular media are chosen by the offender, and there is nothing in the legislative history of this statute indicating such an intention. "If the legislature intended to impose such a restriction, it has failed to express that intention." Lamb v. Burns, 202 Conn. 158, 170 (1987).[3]
Therefore, to interpret the statute as the accused urges would "thwart [the legislature's] intended purpose [and] lead to absurd results. . . ." (Internal quotation marks omitted.) State v. Ehlers, supra, 252 Conn. 593.
 II CT Page 13467
Recently, the U.S. Supreme Court struck down provisions of the federal Child Pornography Prevention Act of 1996, which banned not only pornography employing real children in the production process but also "virtual child pornography" that appears to depict minors but is produced by means other than using real children, such as through the use of youthful-looking adults or computer-imaging technology. Ashcroft v. FreeSpeech Coalition, 122 S.Ct. 1389 (2002). This decision prompted the second challenge to this accused's prosecution for importing child pornography, a claim that § 53a-196c is overbroad and would permit similar prosecutions to those prohibited by the Supreme Court inAshcroft. The text and the history of the statute dispose of this claim.
In the same Public Act that created the crime of importing child pornography the legislature adopted the following definition of "child pornography": "any[4] material involving a live performance or photographic or other visual reproduction of a live performance which depicts a minor in a prohibited sexual act." The legislative history of this addition to the Act makes explicit the legislature's intention to conform Connecticut's approach to the prohibition of child pornography to the U.S. Supreme Court's approach, as explicated in the then recent case of New York v. Ferber, 458 U.S. 747 (1982).
In Ferber the Court upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "intrinsically related" to the sexual abuse of children in that they consisted of pornography produced using real children. Id., 759. Since the state has an interest in protecting the children exploited by the production process, pornography showing real minors can be proscribed whether or not the images are obscene under the definition set forth inMiller v. California, 413 U.S. 15 (1973); viz., that the work in question, taken as a whole, appeals to the prurient interest in sex, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. Id., 24.
It is apparent from a reading of the definition of child pornography inPublic Act No. 85-496, now codified in General Statutes § 53a-193
(13), that it limits prosecutions involving child pornography to those in which real children are used in the production process, as required byFerber. And, it was intended to do just that. In the House of Representatives, when the amendment including this definition was adopted, Rep. Fleming stated that "the language involving a live performance or photographic or other visual reproduction of a live performance . . . was taken from the Ferber decision. . . ." in order to address "concerns which were expressed by some of the members of the CT Page 13468 Chamber concerning the constitutionality of the bill. . . ." 28 H.R. Proc., Pt. 29, 1985 Sess., p. 10699-700. See New York v. Ferber, supra, 458 U.S. 764-65 ("We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection.")
The statute under which the accused is charged does not permit his prosecution for importing into this state any child pornography other than that in which real minors were used in the production process, as required by the Ferber and Ashcroft decisions. Therefore, it does not suffer from the same deficiencies that led the Supreme Court to strike down the federal statute at issue in Ashcroft.
For all of the foregoing reasons the accused's motion to dismiss count ten of the information is denied.
BY THE COURT
Joseph M. Shortall, J.