# STATE OF CONNECTICUT *v.* ROBIN LEDBETTER
## (SC 16286)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

Argued October 23, 2002—officially released April 1, 2003

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Robin Ledbetter, guilty of felony murder in violation of General

Statutes § 53a-54c,[1] conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3)[2] and 53a-48 (a),[3] and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[4] and 53a-134 (a) (3). The trial court rendered judgment in accordance with the jury verdict,[5] from which the defendant appealed to this court pursuant to General Statutes § 51-199 (b) (3).[6] On appeal, the defendant, who was fourteen years old at

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

General Statutes § 53a-133 provides that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[5] The trial court sentenced the defendant to a total effective term of fifty years imprisonment.

[6] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

the time of the commission of the offenses, raises two claims, both of which relate to a confession that she had given to the police. First, the defendant claims that the trial court improperly failed to suppress her confession because it was obtained in the absence of a parent or guardian in violation of General Statutes § 46b-137 (a),[7] which provides, inter alia, that no confession made by a child[8] to a police officer shall be admissible "in any proceeding concerning the alleged delinquency of th[at] child" unless the confession was made in the presence of the child's parent or guardian. Second, the defendant claims that the trial court improperly instructed the jury regarding its role in evaluating the reliability of her confession. With respect to the defendant's first claim, we conclude that, although the facts support the trial court's conclusion that the defendant's confession was obtained in compliance with § 46b-137 (a), that statute is inapplicable to the present case inasmuch as its provisions pertain only to proceedings in juvenile court and not to proceedings in adult criminal court.[9] With respect to the defendant's

[7] General Statutes § 46b-137 provides in relevant part: "(a) Any admission, confession or statement, written or oral, made by a child to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him. . . ."

The legislature made a technical change to § 46b-137 (a) in 1998; Public Acts 1998, No. 98-256, § 11; that is not relevant to the merits of this appeal. For convenience, we refer to the current revision of § 46b-137 (a) unless otherwise stated.

[8] The term " '[c]hild' means any person under sixteen years of age . . . ." General Statutes (Rev. to 1995) § 46b-120.

[9] This state has a unified court system. Thus, all criminal and civil matters, including juvenile matters, fall within the subject matter jurisdiction of the Superior Court. Juvenile matters are comprised of a civil session and a criminal session; all proceedings concerning delinquent children are heard in the criminal session for juvenile matters. General Statutes § 46b-121 (a).

second claim, we conclude that the trial court's instructions were proper. We therefore affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of February 23, 1996, the defendant, Philip Milling, Danixa Sanchez and Sanchez' boyfriend, Lucis Richardson, were socializing together in an apartment located at 84-86 Martin Street (apartment) in Hartford. At some point that evening, Richardson asked the defendant "[i]f it was still on." Sanchez asked Richardson what he meant, but Richardson told Sanchez to mind her own business. Thereafter, the defendant explained to Sanchez that Richardson was referring to a plan to rob a taxi driver.

At approximately 10:30 p.m., the defendant placed a telephone call to the Yellow Cab Company (Yellow Cab) and inquired when Yellow Cab drivers change shifts. The defendant sought this information because she believed that, the later it is in a taxi driver's shift, the more cash fares the driver likely will have collected. Several hours later, at approximately 1:30 a.m. on February 24, 1996, the defendant again called Yellow Cab and requested that a taxi be sent to 82 Martin Street. The defendant left the telephone number at the apartment as the "call back" number.

The defendant and Richardson then changed into dark clothes. Richardson armed himself with a power drill that resembled a gun, and the defendant concealed a kitchen knife in her pants. The defendant and Richardson left the apartment to await the arrival of the taxi.

When the taxi arrived, the defendant entered the vehicle through the rear passenger side door, while Richardson entered from the other side and sat behind the

For ease of reference, we refer to the Superior Court for juvenile matters as juvenile court and to the Superior Court for regular, or adult, criminal matters as criminal court.

driver. Once seated, Richardson placed the drill behind the head of the driver, Collin Williams, and demanded that Williams give him all of his money. When Williams did not respond immediately, Richardson struck him in the head with the drill. A struggle ensued, and Williams grabbed the defendant. During the struggle, the defendant stabbed Williams several times. The defendant and Richardson fled the scene and returned to the apartment.

Upon returning to the apartment, the defendant washed the knife with which she had stabbed Williams. Sanchez asked what had happened, and the defendant explained that the taxi driver had grabbed her, that a struggle had ensued, and that she had stabbed the driver. The defendant also stated that she needed to dispose of the knife. Soon thereafter, the defendant and Milling left the apartment to take a walk while Richardson and Sanchez remained in the apartment. The defendant and Milling returned from their walk approximately forty-five minutes later.

Meanwhile, at approximately 2:15 a.m., Sergeant John Cunningham of the Hartford police department responded to a call regarding a suspiciously parked taxi at 82 Martin Street. When Cunningham arrived at the scene, he discovered Williams slumped over in the front seat of the taxi, seriously wounded. Cunningham administered first aid to Williams and called for an ambulance, which transported Williams to the hospital. Soon thereafter, however, Williams died. The cause of Williams' death was a stab wound to the chest.

During the police investigation of Williams' stabbing, police discovered the "call back" number that the defendant had given to Yellow Cab and traced it to the apartment. Acting on this information, several officers proceeded to the apartment and, at approximately 5 a.m., knocked on the door. The defendant approached

the door, peered through the peephole and observed the police. The defendant notified Milling that the police were at the door, and the defendant and Milling hurriedly left the apartment through the back door.

The police gained entry into the apartment and questioned those inside about Williams' stabbing. Richardson, Sanchez and a third person, Michael Hodges,[10] all denied any knowledge of the incident. They indicated, however, that the defendant and Milling had been in the apartment earlier. The police ran a wanted persons check on the defendant and discovered that she was a runaway from an alternative to detention program.[11] The police also discovered that the department of children and families (department) was the defendant's legal guardian at that time.[12]

Several days later, on February 27, 1996, the Hartford police located the defendant and, at approximately 9:30 p.m., brought her to the police station. The police contacted William Ledbetter, the defendant's biological father (father) and informed him that the defendant was in police custody. The defendant's father arrived at the police station at approximately 10 p.m. and was permitted to speak privately with the defendant. Although the defendant's father relinquished his guardianship rights in 1990, his parental rights never had been terminated.[13]

The police also notified the department that the defendant was in custody, and, in response to that notifi-

---

[10] Hodges apparently was the lessee of the apartment, and the number of the telephone there was listed in Hodges' name.

[11] On February 8, 1996, the defendant escaped from an alternative to detention program to which she previously had been assigned pursuant to a court order.

[12] The department had assumed legal guardianship of the defendant in September, 1995.

[13] The defendant's father has an extensive criminal history and has been imprisoned on various charges for significant periods of time. Apparently, he never had resided with the defendant on a consistent basis.

cation, Maureen Daly, a department social worker assigned to respond to case emergencies after normal business hours that evening, went to the station. Upon her arrival, Daly, who never had met the defendant, spoke privately with the defendant and her father. Daly suggested that the defendant should consult with an attorney. The defendant, however, indicated that she wished to speak to the police.

Thereafter, the police informed the defendant of her *Miranda*[14] rights in the presence of Daly and her father, and the defendant indicated that she understood her rights. The defendant thereupon agreed to waive her rights and, again, in the presence of Daly and her father, she provided the police with a written statement in which she admitted to having participated in the attempted robbery. The defendant asserted, however, that Richardson had stabbed Williams. After the defendant signed the statement, the police arrested her in connection with Williams' death.

The state filed a petition in juvenile court alleging that the defendant had committed felony murder and was delinquent. The case then was transferred to the regular criminal docket of the Superior Court pursuant to General Statutes (Rev. to 1995) § 46b-127, as amended by Public Acts 1995, No. 95-225, § 13.[15] Thereafter, the state filed a substitute information charging the defendant with felony murder, robbery in the first degree, conspiracy to commit robbery in the first degree

---

[14] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[15] General Statutes (Rev. to 1995) § 46b-127, as amended by Public Acts 1995, No. 95-225, § 13 (P.A. 95-225), provides in relevant part: "(a) The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony, a class A or B felony or a violation of section 53a-54d, provided such offense was committed after such child attained the age of fourteen years. . . ."

Hereinafter, all references to § 46b-127 are to the 1995 revision, as amended by P.A. 95-225, unless otherwise stated.

and attempt to commit robbery in the first degree. The defendant subsequently was convicted of felony murder, conspiracy to commit robbery in the first degree and attempt to commit robbery in the first degree.[16] This appeal followed.

## I

The defendant first claims that the trial court improperly permitted the state to introduce her confession into evidence in violation of § 46b-137 (a).[17] We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. The defendant moved to suppress the confession that she had given to the police shortly after she was taken into custody, claiming, inter alia, that § 46b-137 (a) prohibits the state's use of her confession at trial. Although the defendant conceded that both her father and Daly were present when she gave the confession, she claimed that their presence was inadequate for purposes of § 46b-137 (a). Specifically, the defendant claimed that neither her father nor Daly had a sufficiently close relationship with her to enable either of them to advise her in accordance with her best interests, a requirement that, according to the defendant, is implicit in § 46b-137 (a). The state asserted that: (1) § 46b-137 (a) did not apply to the defendant's confession under the circumstances of this case because the state was not seeking to use it in a proceeding in juvenile court involving the defendant's alleged delinquency but, rather, in a proceeding in criminal court; and (2) even if § 46b-137 (a) did apply, it requires only the presence of a parent *or* guardian and, in this case, *both* were present when the defendant gave her confession.

---

[16] The jury found the defendant not guilty of the charge of robbery in the first degree.

[17] See footnote 7 of this opinion for the relevant text of § 46b-137 (a).

The trial court agreed with the defendant that she was entitled to the protection of § 46b-137 (a) in this criminal case. The court also concluded, however, that the requirements of § 46b-137 (a) had been satisfied because the defendant's father and a representative of her legal guardian were present when the defendant gave her confession to the police. In addition, the trial court found that the defendant "was alert, intelligent and self-possessed at the police station . . . that she understood her rights and comprehended the full consequences of a waiver [of those rights]," and that her confession had "resulted from a knowing, intelligent and voluntary waiver of her [constitutional] rights." The court therefore denied the defendant's motion to suppress her confession, and the state subsequently introduced that confession against the defendant in its case-in-chief.

On appeal, the defendant does not challenge the trial court's conclusion that her confession was made knowingly, intelligently and voluntarily. Rather, she renews her claim that her confession was inadmissible because she did not make it in the presence of a "parent" or "guardian" as those terms are used in § 46b-137 (a). In support of her claim, the defendant asserts that the defendant's father was not a parent for purposes of § 46b-137 (a) because "there was no genuine relationship between [the defendant and her father] in the sense of parent and child."[18] The defendant also contends that, although the department was her legal guardian, Daly's presence was insufficient to satisfy the statutory alter-

---

[18] In support of her contention, the defendant further asserts: "There certainly was not the type of relationship mandated by the statute and the case law to assure a child's constitutional rights are adequately protected. That can only be done by an adult that has the best interest of the child and some kind of connection to that child so as to be able to effectively guide him or her in making decisions that will in all likelihood affect the rest of their lives."

native in light of the fact that the defendant had never met Daly prior to her arrest on February 27, 1996.

On appeal, the state maintains, first, that § 46b-137 (a) has no bearing on the admissibility of the defendant's confession in this case because § 46b-137 (a) applies only to delinquency proceedings in juvenile court and not to proceedings in criminal court. Alternatively, the state contends that, even if the provisions of § 46b-137 (a) apply to the defendant's confession, the presence of the defendant's father and Daly when the defendant gave her confession to the police satisfies the statutory requirement of the presence of a parent or guardian.

Although we agree with the state that the trial court properly concluded that the requirements of § 46b-137 (a) were satisfied,[19] we also conclude, as a threshold matter, that the provisions of § 46b-137 (a) do not apply in a case such as the present one, in which the state seeks to use the confession in a proceeding in criminal, rather than juvenile, court.

---

[19] In particular, it is clear that the presence of the defendant's father satisfied the requirements of § 46b-137 (a). Notwithstanding his extensive criminal history; see footnote 13 of this opinion; there is nothing in the record to indicate that the defendant's father lacked the ability to act in the defendant's interests or, for that matter, that he did not seek to do so. Moreover, the defendant has provided no persuasive reason, and we are aware of none, why her father, whose parental rights had not been terminated, is not a "parent" within the meaning of § 46b-137 (a). Indeed, the interpretation of the term "parent" urged by the defendant, namely, that it includes only a parent who has a sufficiently close relationship with his or her child to provide meaningful guidance to that child, finds no support in the statutory language. Furthermore, even if we assume that the defendant's interpretation did find support in the statutory language, that interpretation would be unworkable inasmuch as it would require the police to ascertain, in each case, whether a particular parent-child relationship satisfies the nebulous standard proposed by the defendant. We express no view, however, as to whether, under extraordinary circumstances not present in this case, the biological parent of a child whose parental rights have not been terminated nevertheless may not qualify as the child's "parent" for purposes of § 46b-137 (a). We also express no opinion as to whether Daly's presence was sufficient to satisfy the alternative requirement of § 46b-137 (a) regarding the presence of a guardian.

The issue of whether § 46b-137 (a) is applicable to a confession made by a child whose case has been transferred to criminal court presents a question of statutory construction over which our review is plenary. See, e.g., *State* v. *Vickers*, 260 Conn. 219, 223, 796 A.2d 502 (2002). That review is guided by well established principles of statutory interpretation, the fundamental objective of which is to ascertain the intent of the legislature. Id. "As with all issues of statutory interpretation, we look first to the language of the statute." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 639, 778 A.2d 121 (2001).

Under § 46b-137 (a), unless a child's confession to the police is made in the presence of a parent or guardian after the parent or guardian and child have been advised of certain rights, that confession is "inadmissible in any proceeding concerning the alleged delinquency of the child . . . ." General Statutes § 46b-137 (a). By its express terms, therefore, § 46b-137 (a) pertains only to proceedings that concern a child's *alleged delinquency*. As we have explained; see footnote 9 of this opinion; General Statutes (Rev. to 1995) § 46b-121 (a), as amended by Public Acts 1995, Nos. 95-225, § 10, and 95-254, § 2,[20] provides that "all proceedings concerning delinquent children" shall be heard in juvenile

[20] General Statutes (Rev. to 1995) § 46b-121 (a), as amended by Public Acts 1995, Nos. 95-225, § 10, and 95-254, § 2, provides in relevant part: "Juvenile matters in the civil session include all proceedings concerning uncared-for, neglected or dependent children and youth within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs, contested matters involving termination of parental rights or removal of guardian transferred from the Probate Court and the emancipation of minors, but does not include matters of guardianship and adoption or matters affecting property rights of any child or youth over which the Probate Court has jurisdiction, provided appeals from probate concerning adoption, termination of parental rights and removal of a parent as guardian shall be included. Juvenile matters in the criminal session include all proceedings concerning delinquent children in the state."

court. Thus, the defendant's confession would be subject to the protections of § 46b-137 (a) if the state sought to introduce her confession in a proceeding involving the defendant's alleged delinquency in juvenile court.

The defendant, however, was charged with class A and B felonies and, consequently, her case automatically was transferred from the juvenile court docket to the regular criminal docket in accordance with § 46b-127.[21] The defendant, therefore, was tried as an adult in criminal court, not as a child in juvenile court. See, e.g., *State* v. *Morales*, 240 Conn. 727, 734, 694 A.2d 758 (1997) ("language [of § 46b-127] . . . dictates that children who are validly transferred from the juvenile docket to the regular criminal docket are to be prosecuted in all respects, including sentencing, as though they were adults"). Consequently, the defendant's trial on felony murder and robbery charges properly cannot be characterized as a proceeding *"concerning the alleged delinquency"* of a child that falls within the purview of General Statutes § 46b-137 (a). (Emphasis added.)

Of course, the legislature was free to make § 46b-137 (a) applicable to proceedings in criminal court as well as to proceedings in juvenile court. Indeed, the legislature could have extended the protections of § 46b-137 (a) to criminal proceedings, if it had wished to do so, simply by omitting the limiting language contained in the statute. We can discern no reason, however, why the legislature would have used language expressly *restricting* the reach of § 46b-137 (a) to proceedings concerning delinquency if, as the defendant maintains, it had not intended to impose such a limitation.

Furthermore, it is axiomatic that delinquency proceedings in juvenile court are fundamentally different from criminal proceedings. See, e.g., *State* v. *Kelley*, 206

---

[21] See footnote 15 of this opinion for the relevant text of § 46b-127.

Conn. 323, 329, 537 A.2d 483 (1988) ("the legislature has preserved a separate system for the disposition of cases involving juveniles accused of wrongdoing"). Indeed, "adjudication as a juvenile rather than prosecution as an adult carries significant benefits, chief among which are a determination of delinquency rather than criminality; General Statutes § 46b-121; confidentiality; General Statutes § 46b-124; limitations with respect to sentencing; General Statutes § 46b-140; erasure of files; General Statutes § 46b-146; and isolation from the adult criminal population. General Statutes § 46b-133; see also *In re Tyvonne M.*, 211 Conn. 151, 158–61, 558 A.2d 661 (1989)." *State* v. *Angel C.*, 245 Conn. 93, 103, 715 A.2d 652 (1998). Thus, "[a] delinquency petition does not charge a child with having committed a crime and . . . adjudication of a juvenile offense is not a conviction . . . and does not permit the imposition of criminal sanctions." (Citations omitted; internal quotation marks omitted.) *In re Prudencio O.*, 229 Conn. 691, 701, 643 A.2d 265 (1994). Just as the legislature has opted to grant certain important benefits to children accused of misconduct, so, too, has it chosen to except certain especially serious crimes from the juvenile system pursuant to § 46b-127. As reflected in the plain language of § 46b-137 (a), the legislature also has determined that a child who is prosecuted criminally for committing one or more of those serious crimes shall not be entitled to the protections otherwise afforded children under § 46b-137 (a). This legislative policy determination is a perfectly legitimate one because the legislature, in balancing competing considerations, reasonably could have concluded that, in light of the state's "valid and weighty interest in convicting the guilty"; *State* v. *Brown*, 235 Conn. 502, 527, 668 A.2d 1288 (1995); a child's interest in receiving the protections of § 46b-137 (a) is outweighed by the state's interest in using an otherwise admissible confession against that child in a

criminal prosecution for the commission of a capital felony, class A or B felony or arson murder in violation of General Statutes § 53a-54d. See General Statutes (Rev. to 1995) § 46b-127, as amended by Public Acts 1995, No. 95-225, § 13; cf. *State* v. *Whitaker*, 215 Conn. 739, 749, 578 A.2d 1031 (1990) (decision to expand scope of statute "requires the kind of interest balancing determination best left to the legislature").

Our conclusion is buttressed by *In re Ralph M.*, 211 Conn. 289, 559 A.2d 179 (1989), in which we construed General Statutes (Rev. to 1989) § 46b-137 (a); *In re Ralph M.*, supra, 314–15; which is identical in all material respects to the version of § 46b-137 (a) at issue in the present case.[22] In *In re Ralph M.*, we were called upon to determine whether General Statutes (Rev. to 1989) § 46b-137 (a) precluded the court from admitting statements allegedly obtained in violation of that statute into evidence at the respondent's transfer hearing, which was required under General Statutes (Rev. to 1989) § 46b-127.[23] In determining that the court was not precluded from admitting such statements at a transfer hearing conducted pursuant to General Statutes (Rev. to 1989) § 46b-127, we explained that General Statutes (Rev. to 1989) § 46b-137 (a) "specifically states only that a statement obtained in violation thereof 'shall be

[22] The only difference between the version of § 46b-137 (a) at issue in *In re Ralph M.* and the version of § 46b-137 (a) at issue in the present case is that the former version provides that any admission, confession or statement obtained in violation thereof shall be inadmissible "in any proceeding for delinquency against the child"; General Statutes (Rev. to 1989) § 46b-137 (a); whereas the version at issue in the present case provides that any such admission, confession or statement shall be inadmissible "in any proceeding concerning the alleged delinquency of the child . . . ." General Statutes § 46b-137 (a).

[23] General Statutes (Rev. to 1989) § 46b-127 provides in relevant part: "No . . . transfer [from the docket for juvenile matters to the regular criminal docket] shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. . . ."

inadmissible in *any proceeding for delinquency against the child.'* . . . A transfer hearing is not a proceeding at which an adjudication of delinquency is made. [General Statutes (Rev. to 1989) §] 46b-137 (a), therefore, by its terms is not applicable to transfer hearings." (Citation omitted; emphasis in original.) *In re Ralph M.*, supra, 314. Although, in *In re Ralph M.*, we expressly reserved the question that we address today; id., 315 n.21 ("[t]he question of whether statements obtained in violation of . . . § 46b-137 (a) would be admissible at an adjudicatory proceeding in the adult court will be left to another day"); our conclusion therein limiting the scope of § 46b-137 (a) on the basis of its plain language lends support to our analysis and conclusion in the present case.

The defendant nevertheless contends that an interpretation of § 46b-137 (a) predicated upon its unambiguous language would undermine the policy underlying the enactment of § 46b-137 (a), namely, to provide needed protection to children who are subjected to questioning by the police. We agree, of course, that limiting the scope of § 46b-137 (a) to proceedings in juvenile court necessarily will deprive some children of the protections to which they otherwise would be entitled under § 46b-137 (a). To avoid this result, however, the defendant would have us construe the words, "in *any proceeding concerning the alleged delinquency of the child*"; (emphasis added) General Statutes § 46b-137 (a); to mean in *any proceeding concerning the child*. We may not disregard the words, "the alleged delinquency of," because "[w]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, supra, 257 Conn. 647. More significantly, ignoring those words materially would alter the plain import of

§ 46b-137 (a), thereby frustrating the legislative policy decision to limit its applicability. Such a result would be inconsistent with our responsibility "to interpret the law, not to make it."[24] *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 43 n.24, 716 A.2d 78 (1998); see also *State* v. *Desimone*, 241 Conn. 439, 455, 696 A.2d 1235 (1997) (in absence of compelling reason, court will not impute to legislature intent that is contrary to plain statutory language).

Finally, the legislative determination not to extend the protections of § 46b-137 (a) to a child who, after being subjected to custodial interrogation, is prosecuted as an adult, does not leave such a child without adequate recourse to challenge the state's use of his or her confession. No such confession is admissible unless the police properly advise the child of his or her *Miranda* rights, and, as in any case involving custodial questioning, the state has the burden of proving that the child understood those rights and waived them voluntarily, knowingly and intelligently. E.g., *State* v. *Santiago*, 245 Conn. 301, 320, 323, 715 A.2d 1 (1998). In determining whether a waiver is voluntary, knowing and intelligent, the court is required to consider the

---

[24] The defendant contends that the pertinent legislative history supports her construction of § 46b-137 (a). We disagree. As we explained in *In re Ralph M.*: "In discussing General Statutes § 17-66d, the precursor [to] § 46b-137 (a), on the floor of the General Assembly, Representative Paul D. Shapero stated that the relevant sections of the bill were an attempt to provide for . . . the criteria set forth in the *Gault* decision. 12 H.R. Proc., Pt. 11, 1967 Sess., p. 5057; see Public Acts 1967, No. 630. In *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), the United States Supreme Court specifically dealt with the application of certain constitutional rights at delinquency proceedings where an adjudication of delinquency or guilt might result. Also, when further amendments were made to § 17-66d in 1969, Representative James T. Healey stated that the amendment spells out that a confession is [i]nadmissible in delinquency proceedings . . . . 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4984." (Internal quotation marks omitted.) *In re Ralph M.*, supra, 211 Conn. 315. In light of these comments, it is apparent that the legislature, in enacting § 46b-137 (a), primarily was interested in protecting the rights of children in *delinquency proceedings*.

totality of the circumstances;[25] see, e.g., *State* v. *Perez*, 218 Conn. 714, 728–29, 591 A.2d 119 (1991); an approach that necessarily involves inquiry into "the [child's] age, experience, education, background, and intelligence, and into whether he [or she] has the capacity to understand the warnings given him [or her], the nature of his Fifth Amendment rights, and the consequences of waiving those rights." (Internal quotation marks omitted.) *State* v. *Whitaker*, supra, 215 Conn. 754, quoting *Fare* v. *Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979). The totality of the circumstances test, which, we emphasize, must be applied with special care to confessions made by children; *State* v. *Perez*, supra, 726; adequately protects the rights of children because it "affords a court the necessary flexibility to take into account a [child's] limited experience . . . education and . . . immature judgment . . . ." (Internal quotation marks omitted.) Id., 725, quoting *Fare* v. *Michael C.*, supra, 725.

We conclude, therefore, that the defendant was not entitled to invoke the protections of § 46b-137 (a) because that provision is inapplicable to confessions made by children who are prosecuted as adults in criminal court. Consequently, the defendant cannot prevail on her claim that the trial court improperly denied her motion to suppress.

## II

The defendant also contends that the trial court improperly instructed the jury regarding its role in determining the reliability of her confession. This claim also is without merit.

Certain additional facts are necessary for our resolution of this claim. Before trial, the defendant filed a

---

[25] Courts also apply the totality of the circumstances test to determine whether an *adult's* purported waiver of his or her *Miranda* rights is voluntary, knowing and intelligent. See, e.g., *State* v. *Hafford*, 252 Conn. 274, 295–97, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

written request to charge, which provided in relevant part: "In this case the state has submitted as evidence a written statement taken from [the defendant] on February, 27, 1996. As with all the evidence you should give that statement the weight, or lack of weight you believe it deserves based on your view of the evidence. In the case of a confession you should consider the circumstances surrounding the defendant when she gave the statement to the police. You can consider factors concerning the voluntari[ness] of her statement, whether she is the source of the information in the statement, the physical or psychological environment that yielded the statement . . . and all other factors that otherwise bear on the confession's reliability." (Internal quotation marks omitted.)

After closing arguments, the trial court instructed the jury in relevant part: "The issue before you is whether the defendant's confession was voluntary or involuntary. If you conclude that the confession was involuntary, then you should discard and reject it. If you find that the confession was voluntary, then you may accept it in whole or in part or reject it in whole or in part. The test of voluntariness is whether an examination of all the circumstances shows that the conduct of the police was such as to overbear the defendant's will to resist and bring about a confession that is not truly self-determined. The confession must be the product of an essentially free and unconstrained choice by the maker. . . .

"An involuntary confession is one which is coerced and to be excluded if it results from pressure exerted by the police. A defendant's ignorance of her status because of age or the legal consequences of her involvement or participation does not render a confession involuntary. The issue before you is whether the confession was coerced by the police. This simply means, was it forced or compelled out of the defendant by abusive

conduct, by promises, implied or direct, or by trick, deceit or artifice by the police which overbore the defendant's will to resist and brought about a confession. If you conclude [that] the defendant's confession was voluntary, you may evaluate the confession's credibility by examining the manner in which the confession was obtained. Evidence about the manner in which a confession was secured may often be germane to its probative weight, its reliability and its credibility, a matter that is exclusively for the jury to assess.

"You will recall the testimony presented by the witnesses to the confession, the total circumstances surrounding the rendering of this confession and make your determination accordingly."

Thereafter, the court also instructed the jury: "The defendant contends and argues . . . that [her] confession . . . was involuntary and that, considering her age, background and circumstances surrounding the making of her confession, you should find that the confession was neither probative, reliable nor credible."

The defendant objected to the court's instruction because it did not include the language contained in her request to charge. The defendant took particular issue with the court's failure expressly to apprise the jury that it was to consider "the physical or psychological environment that yielded the statement, and all other factors that otherwise bear on the confession's reliability."

On appeal, the defendant renews her claim of instructional impropriety. In essence, she maintains that the court's instruction did not adequately identify those factors relevant to the jury's determination of the reliability of her confession, such as her age and the nature of the environment in which the confession had been given.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . .

"[Although] the preliminary question of admissibility of a confession is for the court, the credibility and weight to be accorded the confession is for the jury. . . . [T]his rule does not require the court to give a particular instruction to the jury regarding the credibility of [the defendant's] confession simply because [the] confession was a significant piece of evidence. A court has discretion in determining what instructions a jury is to receive. . . . The degree to which reference to the evidence may be [made] . . . lies largely in the discretion of the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 741–42, 799 A.2d 1056 (2002).

The trial court's instruction with respect to the reliability and voluntary nature of the defendant's confession was proper. The court explained that the jury was required to consider all of the circumstances underlying the defendant's confession in evaluating whether that confession was voluntary and reliable. Moreover, the court expressly apprised the jury of the defendant's claim that the confession was unreliable owing to the defendant's "age, background and circumstances surrounding the making of her confession," thereby underscoring those considerations. Indeed, defense counsel

argued forcefully during closing arguments that the confession was unreliable in light of the circumstances under which it was obtained. Although "[a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Casanova*, 255 Conn. 581, 599, 767 A.2d 1189 (2001). In the present case, the challenged portion of the court's instructions was correct in all respects and provided the jury with sufficient guidance regarding its duty to consider all of the relevant factors in evaluating the reliability of the defendant's confession. Accordingly, the defendant's second claim must fail.

The judgment is affirmed.

In this opinion the other justices concurred.