# IN RE JAN CARLOS D.*
## (SC 18448)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille,
Zarella and McLachlan, Js.**

Argued January 15—officially released June 15, 2010

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Timothy J. Sugrue*, assistant state's attorney, with whom were *Paul D. Schneider*, assistant state's attorney, and, on the brief, *Timothy J. Liston*, state's attorney, for the appellant (state).

*Sharon A. Peters*, special public defender, for the appellee (respondent).

*Opinion*

McLACHLAN, J. The sole issue before us in this appeal is whether General Statutes § 54-1f (a),[1] which provides that officers may arrest an individual without a warrant if the individual is apprehended in the act or on the speedy information of others, applies to juveniles who are served with a summons that alleges the commission of criminal offenses. The state appeals[2] from the judgment of the trial court dismissing the juvenile delinquency proceedings brought against the respondent, Jan Carlos D., on the ground that the court lacked jurisdiction over the proceedings because the state had not commenced the proceedings on speedy information in violation of § 54-1f (a). We conclude that § 54-1f (a) does not apply to juveniles who receive such a summons and, accordingly, reverse the judgment of the trial court.

[1] General Statutes § 54-1f (a) provides in relevant part: "Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . ."

[2] The state appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following undisputed facts and procedural history. On June 4, 2008, pursuant to General Statutes § 46b-133 (c),[3] the respondent was served with a summons alleging that, in connection with an incident that had occurred on May, 14, 2008, he had committed assault in the third degree in violation of General Statutes § 53a-61, and disorderly conduct in violation of General Statutes § 53a-182.[4] The respondent appeared in court on June 13, 2008, at which time the state filed a delinquency petition alleging that he had committed the foregoing crimes. At a hearing on July 23, 2008, the respondent orally moved to dismiss the charges on the basis of the delay between the incident during which the allegedly unlawful conduct took place and the service of the summons. Specifically, the respondent characterized the receipt of the summons as an arrest and argued that it was unlawful because it was not initiated on speedy information, which implicated the court's jurisdiction and, therefore, necessi-

[3] General Statutes § 46b-133 provides in relevant part: "(c) Upon the arrest of any child by an officer, such officer may release him to the custody of his parent or parents, guardian or some other suitable person or agency or may immediately turn him over to a juvenile detention center. When a child is arrested for the commission of a delinquent act and the child is not placed in detention or referred to a diversionary program, an officer shall serve a written complaint and summons on the child and his parent, guardian or other person having control of the child. Such parent, guardian or other person shall execute a written promise to appear in court at the time and place specified in such summons. If any person so summoned wilfully fails to appear in court at the time and place so specified, the court may issue a warrant for the child's arrest or a capias to assure the appearance in court of such parent, guardian or other person. . . ."

Although the legislature amended § 46b-133 during a special session in June, 2007; see Public Acts, Spec. Sess., June, 2007, No. 07-4, § 85; those amendments did not take effect until January 1, 2010; see General Statutes (Sup. 2010) § 46b-133; and do not apply to the present case. Hereinafter, all references to § 46b-133 are to the current 2009 revision of the statute.

[4] The record does not reveal whether the respondent was actually arrested following the May 14, 2008 incident pursuant to § 46b-133 (c), nor does the record reveal the events preceding his receipt of the summons on June 4, 2008.

tated dismissal of the charges.[5] The state argued that the proper remedy for the lack of speedy information was a motion to suppress rather than a motion to dismiss. The court dismissed the charges without prejudice on the ground that the respondent had not been arrested on speedy information.[6] On August 11, 2008, the court granted the state's motion for permission to appeal pursuant to General Statutes § 54-96.[7]

On September 23, 2008, the state filed a motion for articulation, requesting that the trial court articulate the factual and legal grounds for its decision to dismiss the charges against the respondent. The Appellate Court granted the motion and, on January 21, 2009, the trial court issued an oral articulation. The trial court stated that it was relying on this court's decision in *Sims* v. *Smith*, 115 Conn. 279, 283, 161 A. 239 (1932), to support its conclusion that it had the authority to dismiss delinquency proceedings when the respondent was subject to a warrantless arrest that was not on speedy information as required by § 54-1f (a). Specifically, the court relied on our statement in *Sims* v. *Smith*, supra, 283, that, "[t]he right to arrest without a warrant had its origin in the necessity of preventing the escape of offenders during the period of delay incident to the procuring of warrants. When there is time to procure a warrant without danger of the escape of the offender an arrest should not be made without it."

The state argues that the court improperly dismissed the charges against the respondent because he was

---

[5] We do not address whether the respondent properly characterized the receipt of the summons as an arrest.

[6] Neither the respondent nor the trial court invoked a statutory basis for the motion to dismiss.

[7] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

not subject to a custodial arrest and therefore was not arrested for the purposes of § 54-1f (a). The state reasons that the summons did not constitute an arrest because it merely directed the respondent to appear in court on the appointed day and time.[8] The respondent argues that § 54-1f (a), and the speedy information provision therein, apply in the present case because, pursuant to General Statutes § 46b-121,[9] the Superior Court for juvenile matters sits as a criminal court when hearing delinquency proceedings.[10]

---

[8] The state also argues that, even if the respondent was arrested for the purposes of § 54-1f (a), the court improperly dismissed the charges against the respondent. The state contends that, at most, the proper remedy for a violation of § 54-1f (a) is the suppression of any evidence tainted by the unlawful conduct. Because we conclude that § 54-1f (a) is inapplicable in the present case, we need not consider whether dismissal of the charges is the proper remedy for a violation of § 54-1f (a).

[9] General Statutes § 46b-121 (a) provides in relevant part: "Juvenile matters in the criminal session include all proceedings concerning delinquent children in the state and persons sixteen years of age and older who are under the supervision of a juvenile probation officer while on probation or a suspended commitment to the Department of Children and Families, for purposes of enforcing any court orders entered as part of such probation or suspended commitment."

Although the legislature amended § 46b-121 in 2007; see Public Acts, Spec. Sess., June, 2007, No. 07-4, § 74; those amendments did not take effect until January 1, 2010; see General Statutes (Sup. 2010) § 46b-121; and are not applicable in the present case. Hereinafter, all references to § 46b-121 are to the current 2009 statutory revision.

[10] The respondent raises a due process claim, arguing for the first time on appeal that by subjecting him to a warrantless arrest, the state violated his rights under the fourteenth amendment to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut. As this court has recognized repeatedly, "a party may seek to prevail on unpreserved claims under the plain error doctrine; see Practice Book § 60-5; or, if the claims are constitutional in nature, under [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)], if the party affirmatively requests and adequately briefs his entitlement to such review in his main brief." *State* v. *McKenzie-Adams*, 281 Conn. 486, 533 n.23, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). The respondent has not, however, requested either *Golding* review or plain error review. Accordingly, we decline to review the respondent's due process claim. See id. (declining to review defendant's claim pursuant to *Golding* or plain error doctrine because defendant had not adequately briefed claim).

The issue of whether the trial court properly interpreted § 54-1f (a) presents a question of law, over which we employ plenary review. *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 232, 983 A.2d 1 (2009). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) Id., 232–33. A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009). Additionally, statutory silence does not necessarily equate to ambiguity. *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004).

"[W]e are [also] guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue,

but also to the broader statutory scheme to ensure the coherency of our construction." (Citation omitted; internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003); *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008) ("[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter." [Internal quotation marks omitted.]).

Pursuant to § 1-2z, we begin with the text of the statute. Section 54-1f (a) provides in relevant part: "Peace officers . . . shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . ." The plain language of the statute offers no clear guidance regarding whether § 54-1f (a) applies to juveniles, as it neither explicitly includes nor excludes juveniles from its purview. We turn our attention, therefore, to other related statutes. The legislature has provided specific protections for juveniles regarding speedy information. Section 46b-133 (a) provides in relevant part: "Nothing in this part shall be construed as preventing the arrest of a child, with or without a warrant, as may be provided by law, or as preventing the issuance of warrants by judges in the manner provided by section 54-2a, *except that no child shall be taken into custody on such process except on apprehension in the act, or on speedy information, or in other cases when the use of such process appears imperative. . . .*"[11] (Emphasis

---

[11] Section 46b-133 (a) appears to impose the same requirements on warrantless arrests as § 54-1f (a). The trial court, however, explicitly relied on § 54-1f (a), and the parties have not raised the applicability of § 46b-133 (a). Therefore, we are not presented with the issue of whether the requirements of § 46b-133 (a) apply to the issuance of a summons pursuant to § 46b-133 (c) and do not address it.

added.) The statute also governs the arrest, release and detention of juveniles. General Statutes § 46b-133 (b) through (d).[12]

Section 46b-133 is part of a larger legislative scheme governing the adjudication of criminal matters involving juveniles. See General Statutes § 46b-120 et seq. It is well established that "the legislature has [created] a separate system for the disposition of cases involving juveniles accused of wrongdoing"; *State* v. *Kelley*, 206 Conn. 323, 329, 537 A.2d 483 (1988); and, accordingly, "delinquency proceedings in juvenile court are fundamentally different from criminal proceedings." *State* v.

---

[12] General Statutes § 46b-133 provides in relevant part: "(b) Whenever a child is brought before a judge of the Superior Court, such judge shall immediately have the case proceeded upon as a juvenile matter. Such judge may admit such child to bail or release him in the custody of his parent or parents, his guardian or some other suitable person to appear before the Superior Court when ordered. If detention becomes necessary or desirable, the same shall be in the manner prescribed by this chapter. . . .

"(d) The court or detention supervisor may turn such child over to a youth service program created for such purpose, if such course is practicable, or such child may be detained pending a hearing which shall be held on the business day next following his arrest. No child shall be detained after such hearing or held in detention pursuant to a court order unless it appears from the available facts that there is probable cause to believe that the child has committed the acts alleged and that there is (1) a strong probability that the child will run away prior to court hearing or disposition, (2) a strong probability that the child will commit or attempt to commit other offenses injurious to him or to the community before court disposition, (3) probable cause to believe that the child's continued residence in his home pending disposition will not safeguard the best interests of the child or the community because of the serious and dangerous nature of the act or acts he is alleged to have committed, (4) a need to hold the child for another jurisdiction, or (5) a need to hold the child to assure his appearance before the court, in view of his previous failure to respond to the court process. . . .

"(e) The police officer who brings a child into detention shall have first notified, or made a reasonable effort to notify, the parents or guardian of the child in question of the intended action and shall file at the detention center a signed statement setting forth the alleged delinquent conduct of the child. Unless the arrest was for a serious juvenile offense, the child may be released by a detention supervisor to the custody of his parent or parents, guardian or some other suitable person. . . ." See also footnote 3 of this opinion.

*Ledbetter*, 263 Conn. 1, 13, 818 A.2d 1 (2003). "Indeed, adjudication as a juvenile rather than prosecution as an adult carries significant benefits, chief among which are a determination of delinquency rather than criminality; General Statutes § 46b-121; confidentiality; General Statutes § 46b-124; limitations with respect to sentencing; General Statutes § 46b-140; erasure of files; General Statutes § 46b-146; and isolation from the adult criminal population. General Statutes § 46b-133 [d]; see also *In re Tyvonne M.*, 211 Conn. 151, 158–61, 558 A.2d 661 (1989). *State* v. *Angel C.*, 245 Conn. 93, 103, 715 A.2d 652 (1998). Thus, [a] delinquency petition does not charge a child with having committed a crime and . . . adjudication of a juvenile offense is not a conviction . . . and does not permit the imposition of criminal sanctions." (Internal quotation marks omitted.) *State* v. *Ledbetter*, supra, 14.

When read in the context of the statutory scheme applicable to juveniles, therefore, the *inapplicability* of § 54-1f (a) within that framework is plain and unambiguous. Indeed, the legislature's establishment of an "unambiguous statutory framework [providing that criminal and juvenile proceedings are governed by separate procedures] counsels against interpolating into our juvenile justice system a single statute from the laws governing adult criminal procedures. The legislature has expressed no such intention."[13] *In re Prudencio O.*, 229 Conn. 691, 698, 643 A.2d 265 (1994). As part of the system for juvenile adjudication, the legislature has

[13] The factual circumstances in the present case are unlike those in *State* v. *Juan L.*, 291 Conn. 556, 969 A.2d 698 (2009). In *Juan L.*, we determined that General Statutes § 54-56d (m), which governs the commitment or release of criminal defendants who are not competent to stand trial, applied to juvenile matters because there was no similar provision specific to such matters and the legislative history indicated that the statute was intended to apply in delinquency proceedings. Id., 570–71. Our decision was consistent with the goals of the juvenile system as set forth in General Statutes § 46b-121h. Id., 572–73.

established a procedure specific to juveniles; see General Statutes § 46b-135 (right to counsel); General Statutes § 46b-138 (right to summon witnesses); and has prescribed the process by which a case is commenced. Many of the rights afforded adults at the commencement of criminal proceedings are specifically afforded to juveniles. Significantly, the legislature has established that a summons is a permissible method of commencing delinquency proceedings. General Statutes § 46b-133 (c) ("[w]hen a child is arrested for the commission of a delinquent act and the child is not placed in detention or referred to a diversionary program, an officer shall serve a written complaint and summons on the child and his parent, guardian or other person having control of the child"). Additionally, as we have already noted, the legislature also has enacted a speedy information provision specific to juveniles. General Statutes § 46b-133 (a) ("no child shall be taken into custody on such process except on apprehension in the act, or on speedy information, or in other cases when the use of such process appears imperative"). It is a well established principle of statutory construction that "specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling." (Internal quotation marks omitted.) *Branford* v. *Santa Barbara*, 294 Conn. 803, 813, 988 A.2d 221 (2010). Accordingly, because the legislature has provided a specific procedure for commencing delinquency proceedings against juveniles, which includes service of a summons, and also has established a specific provision regarding speedy information, we conclude that § 54-1f (a) does not apply to juveniles who receive a summons regarding the commencement of delinquency proceedings and alleging the commission of a crime. To determine otherwise would contravene "the legislature's intent that [juveniles] accused of

wrongdoing be accorded different treatment from adults." *State* v. *Torres*, 206 Conn. 346, 361, 538 A.2d 185 (1988). Therefore, we conclude that § 54-1f (a) is inapplicable to juveniles in regard to the commencement of delinquency proceedings by service of a summons alleging the commission of criminal offenses.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

In this opinion the other justices concurred.